IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH AMAYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. SA-12-CV-00574-DAE |
| | ) | |
| CITY OF SAN ANTONIO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE
PLEADINGS; (2) GRANTING DEFENDANT'S MOTION TO DISMISS;
(3) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT; (4) GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On October 9, 2013, the Court heard oral argument on the Motion for

Judgment on the Pleadings (Dkt. # 22) and the Motion for Partial Summary

Judgment (Dkt. # 37) brought by Plaintiff Joseph Amaya.  The Court also heard the

Motion to Dismiss (Dkt. # 24) and the Motion for Summary Judgment (Dkt. # 38)

brought by Defendant the City of San Antonio.  After reviewing the motions and

the supporting and opposing memoranda, the Court **DENIES** Plaintiff's Motion for

Judgment on the Pleadings, **GRANTS** Defendant's Motion to Dismiss, **DENIES**

Plaintiff's Motion for Partial Summary Judgment, and **GRANTS IN PART AND**

1

**DENIES IN PART** Defendant's Motion for Summary Judgment.

<u>BACKGROUND</u>

I.      <u>Factual Background</u>

On April 5, 2007, Dangerous Premises Investigator Alice Guajardo ("Guajardo")—an employee of the City of San Antonio (the "City")—inspected the residence located at 429 Devine Street in San Antonio, Texas (the "Subject Property") following notification from the Fire Department of a fire-damaged structure.  (Dkt. # 38-1 ("Guajardo Dec.") ¶¶ 2–3.)  She found a fire-damaged, unsecured, and "dangerous" structure that "possibly warranted emergency demolition."  (<u>Id.</u> ¶ 3.)

On May 17, 2007, Guajardo again inspected the Subject Property and found it was in the same "dangerous," unsecured condition.  (<u>Id.</u> ¶ 4.)  According to Guajardo, her assessment revealed "significant" fire damage to the Subject Property's foundation, exterior walls, and roof system.  (<u>Id.</u> ¶ 5.)  She took photographs of the damage and advised the Historic Preservation Office of the "dangerous condition" of the fire-damaged property.  (<u>Id.</u> ¶¶ 4–5.)

On May 29, 2007, Guajardo spoke with Plaintiff Joseph Amaya ("Plaintiff"), the owner of the Subject Property.  (<u>Id.</u> ¶ 6.)  Plaintiff informed Guajardo that his application for assistance to rebuild the Subject Property had

been approved by the Unitarian Universalist Housing Assistance Corporation ("U.U. Housing") and that he would begin repairs in the near future.  (Id.) However, when Guajardo spoke with U.U. Housing on May 31, 2007, she was advised that Plaintiff's application was still pending.  (Id. ¶ 7.)  Around a month later, Guajardo reinspected the Subject Property and found that no repairs had been conducted.  (Id. ¶ 8.)

On June 7, 2007, Building Inspector Ramiro Carrillo ("Carrillo"), also an employee of the City, inspected the Subject Property and agreed with Guajardo that the property was severely fire-damaged and "structurally unsound."  (Id. ¶ 9.) He recommended demolition of the Subject Property.  (Id.)

Several weeks later, Guajardo again inspected the Subject Property and found that no repairs had been conducted.  (Id. ¶ 9.)  On July 2, 2007, she contacted Plaintiff to determine the time frame in which repairs were to be conducted.  (Id. ¶ 10.)  On July 10, 2007, Plaintiff informed Guajardo that repairs would commence on July 16, 2007.  (Id. ¶ 11.)  On the same day, the Lavaca Historic District asked that demolition of the structure be stayed because of its potential historical significance.  (Id.)

On July 30, 2007, Guajardo conducted yet another inspection of the Subject Property and found it to be in the same "dangerous" condition.  (Id. ¶ 12.)

At that time, she recommended demolition of the Subject Property.  (Id.)  On the same day, U.U. Housing requested that demolition proceedings be abated because repairs to the Subject Property were to commence if Plaintiff's application was approved.  (Id.)  Several months later, on November 27, 2007, Guajardo again visited the Subject Property and found it to be in the same condition.  (Id.)  According to Guajardo, although she attempted to contact Plaintiff to discuss the matter, she was unable to reach him by telephone.  (Id. ¶ 13.)

On March 14, 2008, Guajardo reinspected the Subject Property and found that it had "deteriorated substantially from the initial inspections."  (Id. ¶ 14.)  She further found that the severity of the deterioration "posed a clear and imminent threat" to "public safety."  (Id.)  After consulting with Carrillo—and subsequently obtaining the approval of Rod Sanchez ("Sanchez"), the Director of the City's Development Services Department, and of Housing and Neighborhood Services Director David Garza ("Garza")—the Subject Property was "declared to be an emergency which required demolition."  (See id. ¶ 15.)  Both Sanchez and Garza issued sworn affidavits stating that the Subject Property posed a clear and imminent threat to life, safety, and/or property necessitating immediate demolition.  (Id. at 20–21.)  They further found that there was no "feasible alterative abatement procedure" other than demolition.  (See id.)

On March 14, 2008, the City of San Antonio carried out an emergency demolition of the Subject Property.  (Id. ¶ 16.)  On March 18, 2008, Garza, acting on behalf of the City, sent a letter notifying Plaintiff that the Subject Property had been demolished and that Plaintiff should expect an invoice for the demolition and related expenses.  (Id. at 12.)  The next month, an invoice for $3480.00 was mailed to Plaintiff.  (Id. at 13.)

II.   Procedural History

On June 11, 2012, Plaintiff filed suit against the City of San Antonio. (Dkt. # 1.)  In the Complaint, Plaintiff brings claims for violations of (1) Chapter 6, Article VIII, § 6-175 of the City's Code of Ordinances; (2) Chapter 214 of the Texas Local Government Code; (3) Article 1, § 17 and § 19 of the Texas State Constitution; and (4) 42 U.S.C. § 1983 for the deprivation of rights secured by the Fourth, Fifth, and Fourteenth Amendments.  (Id.)  Plaintiff also seeks a declaratory judgment under the Texas Uniform Declaratory Judgment Act in addition to punitive and/or exemplary damages and attorneys' fees.  (Id.)

On April 3, 2013, Plaintiff filed a Motion for Judgment on the Pleadings.  (Dkt. # 22.)  On April 12, 2013, the City filed a Response in opposition to Plaintiff's Motion for Judgment on the Pleadings and a partial Motion to Dismiss.  (Dkt. # 24.)  On April 25, 2013, Plaintiff filed a Reply in support of his

Motion for Judgment on the Pleadings and a Response in opposition to the City's

Motion to Dismiss.  (Dkt. ## 25–26.)

On August 5, 2013, Plaintiff filed a Motion for Partial Summary

Judgment.  (Dkt. # 37.)  On the same day, the City filed a Motion for Summary

Judgment.  (Dkt. # 38.)  The parties fully briefed both motions.  (Dkt. ## 40–43.)

<u>STANDARD OF REVIEW</u>

I.      <u>Rule 12(c)</u>

After the pleadings are closed—but early enough not to delay trial—a

party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  The

standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to

dismiss.  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007).

"[T]he central issue is whether, in the light most favorable to the plaintiff, the

complaint states a valid claim for relief."  <u>Great Plains Trust Co. v. Morgan Stanley</u>

<u>Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted).  "The

district court may dismiss a claim when it is clear that the plaintiff can prove no set

of facts in support of his claim that would entitle him to relief."  <u>Id.</u> (citations

omitted) (internal quotation marks omitted).

In analyzing the complaint, the court accepts all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff.  <u>Id.</u> at 312–13.  "The

tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions," and courts "are not bound to accept as true a

legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (citations omitted) (internal quotation marks omitted). The plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

II.     Summary Judgment

        Summary judgment is granted under Federal Rule of Civil Procedure

56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).

The main purpose of summary judgment is to dispose of factually unsupported

claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

        The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact. Id. at 323. If the moving party meets

this burden, the non-moving party must come forward with specific facts that

establish the existence of a genuine issue for trial. <u>ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.</u>, 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  <u>Brown v. City of Hous.</u>, 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

I.    <u>Plaintiff's Motion for Judgment on the Pleadings</u>

Plaintiff seeks judgment on the pleadings with respect to his claims for violations of the Texas State Constitution as well as his claims for violations of the Fourth and Fourteenth Amendments of the United States Constitution (brought pursuant to 42 U.S.C. § 1983).  (Dkt. # 22.)  He argues that he is entitled to judgment on his Fourth and Fourteenth Amendment claims under the doctrine of

8

"offensive collateral estoppel."  (Id. ¶¶ 18–25.)  More specifically, he contends that

the entry of judgment against the City of San Antonio based on substantially

similar facts in Kinnison v. City of San Antonio, et al., No. SA-08-CV-421-XR,

binds the City in this case.

        Collateral estoppel, also known as issue preclusion, "bars 'successive

litigation of an issue of fact or law actually litigated and resolved in a valid court

determination essential to the prior judgment,' even if the issue recurs in the

context of a different claim."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008)

(quoting New Hampshire v. Maine, 532 U.S. 742, 748–49 (2001)).  Offensive use

of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant

from litigating an issue the defendant has previously litigated unsuccessfully in an

action with another party."  Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326

n.4 (1979).  For a plaintiff to invoke the doctrine of offensive collateral estoppel,

the Fifth Circuit has held that the following requirements must be satisfied:

> (1) the issue under consideration is identical to that litigated in the
> prior action; (2) the issue was fully and vigorously litigated in the
> prior action; (3) the issue was necessary to support the judgment in the
> prior case; and (4) there is no special circumstance that would make it
> unfair to apply the doctrine.

Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 391 (5th Cir. 1998).

"[T]he decision as to the applicability of the doctrine is within the discretion of the

9

trial judge who should not allow its use when to do so would be unfair to the defendant." Rufenacht v. Iowa Beef Processors, Inc., 656 F.2d 198, 202 (5th Cir. 1981).

Here, the case upon which Plaintiff relies was not "fully and vigorously litigated," because the Fifth Circuit reversed the trial court's judgment in favor of the plaintiff, Kinnison, on his Fourth and Fourteenth Amendment claims. See Kinnison v. City of San Antonio, 480 F. App'x 271, 272 (5th Cir. 2012). Those claims were then remanded to proceed to trial on their merits, although the parties settled the case before trial. See Kinnison v. City of San Antonio, No. SA-08-CV-421-XR, 2013 WL 228022, at *6 (W.D. Tex. Jan. 22, 2013). Because there was no final decision on the merits of Kinnison's claims under the Fourteenth and Fourth Amendments, the doctrine of collateral estoppel does not apply.

Additionally, Plaintiff is not entitled to judgment on the pleadings with respect to his claims for violations of the Texas State Constitution for the reasons set forth below. Accordingly, Plaintiff's Motion for Judgment on the Pleadings is denied.

II.     <u>Motion to Dismiss and Motions for Summary Judgment</u>

      The City has moved to dismiss Plaintiff's claims under 42 U.S.C. § 1983 for the deprivation of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.[1]  (Dkt # 24.)  However, before the Court addressed the merits of this motion, Plaintiff filed a Motion for Partial Summary Judgment with respect to his claims for violations of Fourteenth Amendment and Chapter 214 of the Texas Local Government Code.  (Dkt. # 37.)  Soon thereafter, the City filed a Motion for Summary Judgment on all of Plaintiff's claims.  (Dkt. # 38.)  Rather than consider each of these motions separately, the Court considers the sufficiency of each of Plaintiff's causes of action below.

---

[1] Plaintiff correctly notes that the City's Rule 12(b)(6) motion should be construed as a Rule 12(c) motion.  Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made."  <u>Doe v. United States</u>, 419 F.3d 1058, 1061 (9th Cir. 2005).  Here, because the City filed an Answer (Dkt. # 4) before moving to dismiss Plaintiff's claims (Dkt. # 24), the Court construes the motion as a motion for judgment on the pleadings.  <u>See</u> <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999) (finding the district court did not err in construing a Rule 12(b)(6) motion filed after the pleadings had closed as a Rule 12(c) motion).

A.      Violation of City Ordinance 6-175

Plaintiff brings a claim pursuant to Chapter 6, Article VIII, § 6-175 of the Code of Ordinances for the City of San Antonio ("Ordinance 6-175"), arguing that he did not receive proper notice of the demolition of the Subject Property pursuant to the terms of the ordinance.  He also asserts that the City's Dangerous Structure Determination Board ("DSDB") did not receive proper notice of the demolition.[2]  (Dkt. # 1 ¶¶ 8.1–8.2.)  As a result, Plaintiff avers that he suffered monetary damages.  (Id. ¶ 8.2.)

Under Texas law, courts construe municipal ordinances in the same manner that they construe statutes.  Bd. of Adjustment of City of San Antonio v. Wende, 92 S.W.3d 424, 430 (Tex. 2002).  Texas courts "apply a 'strict rule of construction' to statutory enforcement schemes and imply causes of action only when the drafters' intent is clearly expressed from the language as written." Witkowski v. Brian, Fooshee and Yonge Props., 181 S.W.3d 824, 831 (Tex. App. 2005) (citing Brown v. De La Cruz, 156 S.W.3d 560, 567 (Tex. 2004)).

At the time of the Subject Property's demolition, Ordinance 6-175 provided that the City could demolish dangerous structures without prior notice to

_____

[2]  The Court notes that Plaintiff does not explain why he has legal standing to bring such a claim on behalf of the DSDB.

the owner when, "due to one or more structural conditions threatening the

structural integrity of a building or structure, there is a clear and imminent danger

to the life, safety or property of any person." (Dkt. # 38-4.)  Two of three

designated officials, including the Director of Development Services, had to concur

in the determination that the building posed an "imminent" danger.  (Id.)

Ordinance 6-175 also required that the two officials find that "no other abatement

procedure is reasonably available except demolition."  (Id.)  The demolition had to

occur within 72 hours of when an official viewed the building and the owner of the

building had to be notified after the demolition.  (Id.)

        However, there is nothing in the language of Ordinance 6-175 itself to

indicate that the City Counsel had any intent to create a private cause of action.  As

one court in this district noted, the ordinance "merely authorizes officials to

conduct a summary abatement procedure in an emergency and outlines the

procedures necessary to execute the abatement."  RBIII, L.P. v. City of San

Antonio, No. SA-09-CV-119-XR, 2010 WL 3516180, at *4 (W.D. Tex. Sept. 3,

2010).  No reference is made in Ordinance 6-175 to the property owner and no

penalty for failure to adhere to the ordinance is provided.  See id.  Accordingly, the

Court finds that Ordinance 6-175 does not create a private cause of action.  The

Court therefore grants summary judgment in favor of the City on Plaintiff's claims brought pursuant to Ordinance 6-175.

      B.    <u>Violations of the Texas Local Government Code</u>

        Plaintiff claims that the City of San Antonio violated § 214.001 of the Texas Local Government Code by failing to provide notice and a hearing prior to the demolition of the Subject Property.  (Dkt. # 1 ¶ 9.1.)  Plaintiff also avers that Ordinance 6-175 violates Texas Local Government Code § 214.001 <u>et seq.</u>  (<u>Id.</u> ¶ 9.02.)  The City counters that § 214.002 applies to the instant case instead of § 214.001.  (Dkt. # 40 at 4.)  It also contends that there is no private cause of action created by Texas Local Government Code § 214.001 <u>et seq.</u>  (Dkt. # 38.)

        Section 214.001 governs, among other things, the "demolition" of structures that are "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare."  Tex. Loc. Gov't Code § 214.001(a)(1).  It provides certain procedural protections to property owners, requiring that the municipality search through a list of records to identify the property's true owner, <u>id.</u> § 214.001(q), providing for pre-deprivation notice and a hearing, <u>id.</u> § 214.001(c)–(h), and setting ordinance-content standards for municipalities, <u>id.</u> § 214.001(b).  Additionally, § 214.0012 provides for judicial review of a municipality's administrative order issued pursuant to § 214.001.  <u>See</u>

14

id. § 214.0012; Carlson v. City of Houston, 309 S.W.3d 579, 583–84 (Tex. App. 2010).  According to § 214.0012, the owner of the property subject has thirty days to appeal the "final decision" of the municipal authority to the state court.  Tex. Loc. Gov't Code § 214.0012.

Section 214.002—as opposed to § 214.001—applies "[i]f the governing body of a municipality finds that a building . . . is likely to endanger persons or property."  Id. § 214.002.  Section 214.002 contains none of the procedural protections that apply to § 214.001.  See id.; Kinnison, 480 F. App'x at 278 n.11.  Additionally, the Texas Local Government Code does not expressly provide for judicial review of an abatement made pursuant to § 214.002.[3]

In this case, the window of time for Plaintiff to contest the demolition of the Subject Property pursuant to Chapter 214 of the Texas Local Government Code passed well before this lawsuit was ever filed.  Pursuant to § 214.0012, Plaintiff had thirty days after the "final decision" of the City to file a petition for

---

[3] It is unclear whether judicial review under § 214.0012 is available after a municipality unilaterally demolishes a structure pursuant to § 214.002.  At least one Texas court has applied § 214.0012 to sections of Chapter 214 besides § 214.001.  See, e.g., Carlson, 309 S.W.3d at 587–88 (holding that judicial review under § 214.0012 was available following the City of Houston's order pursuant to § 214.216 that residents vacate an apartment building).  However, the Court need not decide this issue because, even if judicial review under § 214.0012 does exist, Plaintiff did not timely file such an administrative appeal.

judicial review.  See Tex. Loc. Gov't Code § 214.0012.  Plaintiff received a letter

notifying him that the Subject Property had been demolished by order of the City

more than two years prior to the filing of the instant lawsuit.  Accordingly, Plaintiff

did not timely seek review of the City's decision pursuant to Chapter 214.

    The Court notes, however, that Chapter 214 of the Texas Local

Government Code is not unimportant to Plaintiff's other claims in this case.

Namely, the statute informs the Court's analysis with respect to whether the City

violated Plaintiff's procedural due process rights under the Fourteenth

Amendment.[4]  Nevertheless, Plaintiff has no remaining direct cause of action under

Chapter 214 of the Texas Local Government Code.  The Court therefore grants

--------

[4] The Fifth Circuit explained in Kinnison,

The City contends that the imminent-danger determination justified
proceeding without notice or process.  See [Tex. Loc. Gov't Code]
§ 214.002.  If that determination was unreasonable, however, the City would
have been required to give Kinnison notice, and he would have had the right
to administratively challenge any threatened property deprivation [under
§ 214.001].  Thus, the City's actions may be excused for procedural due
process purposes only if the imminent-danger determination was not an
abuse of discretion.  See Patel, 298 F.3d at 341 (emphasizing that a
procedural due process inquiry focuses on whether the state actor's danger
determination was reasonable, not on whether an actual danger existed).

480 F. App'x at 278.

summary judgment in favor of the City on Plaintiff's claims brought pursuant to
Texas Local Government Code § 214.001 et seq.

C.    Article I, Section 17 of the Texas Constitution

Plaintiff claims that the demolition of the Subject Property was an
unconstitutional "taking" under Article I, § 17 of the Texas Constitution.  (Dkt. # 1
¶¶ 11.1–11.4.)  Article I, § 17 of the Texas Constitution states: "No person's
property shall be taken, damaged, or destroyed for or applied to public use without
adequate compensation being made . . . . "  Tex. Const. art. I, § 17.   "The [Texas]
Constitution itself is the authorization for compensation for the destruction of
property and is a waiver of governmental immunity for the taking, damaging or
destruction of property for public use."  Steele v. City of Houston, 603 S.W.2d
786, 791 (Tex. 1980); see also Carlson v. City of Houston, 401 S.W.3d 725, 731
(Tex. App. 2013) ("[G]overnmental immunity does not shield the City from an
action for compensation under the Takings Clause.").

Whether a "taking" of property has occurred in violation of Article I,
§ 17 of the Texas Constitution is a question of law.  Tex. Dep't of Transp. v. City
of Sunset Valley, 146 S.W.3d 637, 644 (Tex. 2004).  "[T]o recover under the
constitutional takings clause, one must first demonstrate an ownership interest in
the property taken."  Id.  A plaintiff must then prove that "(1) the government's

17

intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use." Patel v. City of Everman, 179 S.W.3d 1, 17 (Tex. App. 2004).

In this case, the City argues that it is not required to provide compensation to Plaintiff, because the Subject Property was a "public nuisance" and, therefore, the City was justified in using its police power to preserve public safety by demolishing the building.  Consistent with this argument, the Texas Supreme Court has "long held" that "the government commits no taking when it abates what is, in fact, a public nuisance." City of Dallas v. Stewart, 361 S.W.3d 562, 569 (Tex. 2012) (citing City of Texarkana v. Reagan, 247 S.W. 816, 817 (Tex. 1923)).  Thus, a finding that property is a public nuisance will generally be dispositive of a "takings" claim.  Id.

"The [Texas] Local Government Code's nuisance definition prohibits buildings that are 'dilapidated,' 'substandard,' or 'unfit for human habitation.'" Id. at 570 (quoting Tex. Loc. Gov't Code § 214.001(a)(1)).  Thus, to determine whether a nuisance existed in this case, the Court is tasked with applying this "general statute[]" to the "specific facts" of the case.  Id. (citing Stockwell v. State, 221 S.W. 932, 935 (Tex. 1920)).

Here, the only admissible evidence before the Court establishes that the Subject Property posed a "nuisance" as defined by Texas Local Government

Code § 214.001(a)(1).  Indeed, Plaintiff's counsel conceded at the hearing that the Subject Property was "unfit for human habitation" in the normal sense following the fire.  Photographs taken by Guajardo and the testimony in her declaration also confirm that the building was not fit for human habitation.  Moreover, Plaintiff has not offered any evidence that he had conducted repairs on the Subject Property that rendered it habitable.

Instead, Plaintiff merely attacks the credentials of the City's building inspector Guajardo because she is not a structural engineer.  However, a "nuisance" is not merely defined as a structurally unsound building, but also one that is "dilapidated" and "unfit for human habitation."  See Stewart, 361 S.W.3d at 570 (quoting Tex. Loc. Gov't Code § 214.001(a)(1)).  Further, that Guajardo was a certified building inspector and authorized to make demolition recommendations is sufficient for her conclusions regarding the state of the building to be admissible as evidence.[5]  See Kinnison, 480 F. App'x at 278 n.12.  Because Plaintiff has conceded that the building was not habitable, and because he has produced no evidence to rebut the testimony of the building inspectors, the Court concludes that the Subject Property constituted a "nuisance" that the City could properly dispose

---

[5] For this reason, to the extent Plaintiff seeks to strike Guajardo's declaration, that request is denied.

of in accordance with its police powers.[6]  Thus, Plaintiff's claim pursuant to Article

I, § 17 of the Texas Constitution fails as a matter of law and the Court grants the

City's motion for summary judgment on that claim.

>    D.    <u>Article I, Section 19 of the Texas Constitution</u>

Plaintiff also brings a cause of action under Article I, § 19 of the

Texas Constitution.  (Dkt. # 1 ¶¶ 10.1–10.3.)  Section 19 provides:  "No citizen of

this State shall be deprived of life, liberty, property, privileges or immunities, or in

any manner disenfranchised, except by the due course of the law of the land."  Tex.

Const. art. I, § 19.

"Texas courts have held that the 'due course of law' clause of Article

I, § 19 does not provide a private cause of action for damages."  <u>RBIII, L.P.</u>, 2010

WL 3516180, at *7; <u>see also</u> <u>City of Beaumont v. Bouillion</u>, 896 S.W.2d 143, 148

(Tex. 1995) ("[T]he text of the Texas Bill of Rights cuts against an implied private

right of action for the damages sought because it explicitly announces the

consequences of unconstitutional laws."); <u>Patel</u>, 179 S.W.3d at 13 (Tex. App.

2004) ("The due process provisions of the Texas Constitution do not provide for a

---

[6]  This does not, however, determine whether the City ought to have provided notice and a hearing prior to the demolition of the Subject Property.  In other words, the failure of Plaintiff's state-law "takings" claim does not affect Plaintiff's procedural due process claim under the Fourteenth Amendment.

cause of action for damages, but rather only for direct claims seeking equitable relief.").  Because Plaintiff cannot seek monetary damages pursuant to Article I, § 19 of the Texas Constitution, the Court grants the City's motion for summary judgment on that claim.

    E.    Municipal Liability under Section 1983

        The City has moved to dismiss, and also moved for summary judgment on, Plaintiff's claims under 42 U.S.C. § 1983 for the deprivation of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments.  (Dkt. ## 24, 38.) The City contends that Plaintiff has not sufficiently alleged facts triggering municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

        Municipalities and other local government units are among those "persons" to whom § 1983 applies.  See Monell, 436 U.S. at 690.  However, municipalities may not be held responsible for the acts of their employees under a respondeat superior theory of liability.  See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (noting that the Supreme Court has "reject[ed] municipal liability based on respondeat superior, because the text of section 1983 will not bear such a reading").  In other words, a plaintiff must allege facts showing that the municipality itself—not merely its employees—has violated the

Constitution.  Thus, to prevail in a § 1983 municipal liability claim, a plaintiff must establish the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski, 237 F.3d at 578 (quoting Monell, 436 U.S. at 694).  Only by satisfying all three of these elements can a plaintiff "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  Id.

   An "official policy" may arise either directly from an authorized policymaker's[7] "statement, ordinance, regulation, or decision," or indirectly from a "persistent, widespread practice" of non-policymaking municipal employees that "is so common and well settled as to constitute a custom."  Bennett v. Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).  With respect to direct policymaker action, a single discretionary action taken by a policymaking official does not establish an official policy unless the official is "responsible for establishing final government policy" with respect to the discretionary action taken.  Brady v. Fort Bend Cnty., 145 F.3d 691, 699 (5th Cir. 1998) (quoting

---

   [7] To determine whether a municipal official is a policymaker, the court looks to state law to assess whether the official had "final policymaking authority" over the activity at issue.  See McMillian v. Monroe Cnty., 520 U.S. 781, 786 (1997).

Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).  With respect to official policy arising from custom, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom," and "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations."  Piotrowski, 237 F.3d at 581 (internal quotation marks omitted).

In this case, Plaintiff has not pleaded sufficient facts to satisfy the Monell standard.  Plaintiff correctly argues that the City's "policymaker," the City Council, adopted an "official policy" by enacting Ordinance 6-175.  As described above, Ordinance 6-175 provided that the City could demolish a dangerous structure without prior notice to the property owner when, "due to one or more structural conditions threatening the structural integrity of a building, there is a clear and imminent danger to the life, safety or property of any person."  (Dkt. # 38-4.)

However, Plaintiff has failed to sufficiently plead the third element of municipal liability under Monell—namely, "a violation of constitutional rights whose moving force is the policy or custom."  See Piotrowski, 237 F.3d at 578 (internal quotation marks omitted).  Plaintiff does not argue that Ordinance 6-175,

as enacted at the time of demolition, was <u>per se</u> unconstitutional,[8] but rather that

the City's "imminent-danger determination" in this case was an "abuse of

discretion." (Dkt. # 41 at 9.) However, whether Guajardo and other non-

policymaking employees tasked with inspecting the Subject Property abused their

discretion in determining that an exigency existed does not establish a <u>custom</u> of

constitutional violations under <u>Monell</u>. Plaintiff has not pleaded any other

instances of similar constitutional violations committed by the City. Because "[a]

customary municipal policy cannot ordinarily be inferred from [a] single

constitutional violation[]," Plaintiff fails to state a claim for municipal liability

under § 1983. <u>See</u> <u>Piotrowski</u>, 237 F.3d at 581 (internal quotation marks omitted).

In other words, to state a claim, Plaintiff cannot merely challenge the manner in

which the City applied Ordinance 6-175 in his specific case; he must allege facts

showing other instances where the City abused its discretion in finding that certain

structures—which would otherwise be entitled to pre-demolition notice and a

---

[8] The ordinance does not appear to be facially unconstitutional. "While the Fourteenth Amendment's Due Process Clause generally requires that the State provide an opportunity to be heard before it takes property, predeprivation notice is not always required." <u>RBIII, L.P. v. City of San Antonio</u>, 713 F.3d 840, 844 (5th Cir. 2013) (citing <u>Gilbert v. Homar</u>, 520 U.S. 924, 930 (1997)). Relevant to the ordinance at issue here, "where the State acts to abate an emergent threat to public safety, postdeprivation process satisfies the Constitution's procedural due process requirement." <u>Id.</u> (citing <u>Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.</u>, 452 U.S. 264, 301–03 (1981)).

hearing under Texas Local Government Code § 214.001—posed an "imminent" danger to public safety.

Accordingly, the Court dismisses Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.  However, because Plaintiff has not been afforded an opportunity to amend his complaint, the Court grants Plaintiff leave to amend with respect to his § 1983 claims.

F.    Declaratory Judgment

Plaintiff invokes the Texas Uniform Declaratory Judgment Act, codified in Chapter 37 of the Texas Civil Practice and Remedies Code, and seeks a declaration that the Subject Property did not "constitute a clear and imminent danger to the life, safety or property of any person."  (Dkt. # 1 ¶ 15.1.)  He also seeks a declaration that, under the circumstances at issue in this case, "other abatement procedures were reasonably available" besides demolition.[9]  (Id.)

As a preliminary matter, the Fifth Circuit has held that the Texas Declaratory Judgment Act is a procedural rule that does not apply in federal court. See Utica Lloyd's of Tex. v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998).

---

[9] To the extent that Plaintiff sought a declaration that Ordinance 6-175 was unconstitutional in his "First Amended Complaint" (Dkt. # 27), that complaint was stricken by order of the Court.  (Dkt. # 46.)

Accordingly, the Court construes Plaintiff's claims for declaratory relief as being brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 <u>et seq</u>.[10]

In this case, it is unclear what purpose a declaratory judgment will serve because the declarations that Plaintiff seeks will not clarify the parties' rights and Plaintiff cannot use them as a vehicle to recover monetary damages. "A declaratory judgment is generally moot where 'the question presented for decision seeks a judgment upon a matter which, even if the sought judgment were granted, could not have any practical effect upon the parties.'" <u>Ferreira v. Dubois</u>, 963 F. Supp. 1244, 1262 (D. Mass. 1996) (quoting <u>Perez v. Sec'y of Health, Educ. & Welfare</u>, 354 F. Supp. 1342, 1346 (D.P.R. 1972)). Accordingly, the Court dismisses as moot Plaintiff's claims for declaratory judgment.

<u>CONCLUSION</u>

For the reasons given above, the Court **DENIES** Plaintiff's Motion for Judgment on the Pleadings (Dkt. # 22), **GRANTS** Defendant's Motion to

---

[10] The City cites several Texas state-court decisions for the proposition that Plaintiff's claims for declaratory judgment are improper in this case. Because these cases interpret the Texas Declaratory Judgment Act, they are not controlling in the instant case. <u>See</u> <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 674 (1950) ("[T]hat the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial.").

Dismiss (Dkt. # 24), **DENIES** Plaintiff's Motion for Partial Summary Judgment (Dkt # 37), and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (Dkt. # 38).  Plaintiff has thirty (30) days from the date of this Order in which to file an amended pleading.

IT IS SO ORDERED.

DATED: San Antonio, Texas, October 30, 2013.

_____
David Alan Ezra
Senior United States District Judge