UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH AMAYA, | § | Cv. No. 5:12-CV-00574-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |

ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS; (2) DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION; AND (3) EXTENDING DISPOSITIVE MOTIONS
DEADLINE

On July 2, 2014, the Court heard oral argument on a Motion to

Dismiss filed by Defendant City of San Antonio (the "City").  (Dkt. # 52.)  Edward

L. Bravenec, Esq., appeared on behalf of Plaintiff Joseph Amaya ("Plaintiff"), and

Judith D. Sanchez, Esq., appeared on behalf of the City.  After careful

consideration of the memoranda in support of and in opposition to the Motion, and

in light of the parties' arguments at the hearings, the Court, for the reasons that

follow, **GRANTS IN PART AND DENIES IN PART** the City's Motion to

Dismiss and **DENIES** Plaintiff's Motion for Reconsideration.

1

<u>BACKGROUND</u>

I.      <u>Factual Background</u>

On April 5, 2007, Dangerous Premises Investigator Alice Guajardo ("Guajardo")—an employee of the City—inspected the residence located at 429 Devine Street in San Antonio, Texas (the "Property") following notification from the Fire Department of a fire-damaged structure. (Dkt. # 38-1 ("Guajardo Dec.") ¶¶ 2–3.)  She found a fire-damaged, unsecured, and "dangerous" structure that "possibly warranted emergency demolition." (<u>Id.</u> ¶ 3.)

On May 17, 2007, Guajardo again inspected the Property and found it was in the same "dangerous," unsecured condition.  (<u>Id.</u> ¶ 4.)  According to Guajardo, her assessment revealed "significant" fire damage to the Property's foundation, exterior walls, and roof system.  (<u>Id.</u> ¶ 5.)  She took photographs of the damage and advised the Historic Preservation Office of the "dangerous condition" of the fire-damaged property.  (<u>Id.</u> ¶¶ 4–5.)

On May 29, 2007, Guajardo spoke with Plaintiff, the owner of the Property.  (<u>Id.</u> ¶ 6.)  Plaintiff informed Guajardo that his application for assistance to rebuild the Subject Property had been approved by the Unitarian Universalist Housing Assistance Corporation ("U.U. Housing") and that he would begin repairs in the near future.  (<u>Id.</u>)  However, when Guajardo spoke with U.U. Housing on May 31, 2007, she was advised that Plaintiff's application was still pending.  (<u>Id.</u> ¶

2

7.)  Around a month later, Guajardo re-inspected the Property and found that no repairs had been conducted.  (<u>Id.</u> ¶ 8.)

On June 7, 2007, Building Inspector Ramiro Carrillo ("Carrillo"), also an employee of the City, inspected the Property and agreed with Guajardo that it was severely fire-damaged and "structurally unsound."  (<u>Id.</u> ¶ 9.)  He recommended demolition of the Property. (<u>Id.</u>)

Several weeks later, Guajardo again inspected the Property and found that no repairs had been conducted.  (<u>Id.</u> ¶ 9.)  On July 2, 2007, she contacted Plaintiff to determine the time frame in which repairs were to be conducted.  (<u>Id.</u> ¶ 10.)  On July 10, 2007, Plaintiff informed Guajardo that repairs would commence on July 16, 2007.  (<u>Id.</u> ¶ 11.)  On the same day, the Lavaca Historic District asked that demolition of the structure be stayed because of its potential historical significance.  (<u>Id.</u>)

On July 30, 2007, Guajardo conducted yet another inspection of the Property and found it to be in the same "dangerous" condition.  (<u>Id.</u> ¶ 12.)  At that time, she recommended demolition of the Property.  (<u>Id.</u>)  On the same day, U.U. Housing requested that demolition proceedings be abated because repairs to the Property were to commence if Plaintiff's application was approved.  (<u>Id.</u>)  Several months later, on November 27, 2007, Guajardo again visited the Property and found it to be in the same condition.  (<u>Id.</u>)  According to Guajardo, although she

attempted to contact Plaintiff to discuss the matter, she was unable to reach him by telephone.  (Id. ¶ 13.)

On March 14, 2008, Guajardo re-inspected the Property and found that it had "deteriorated substantially from the initial inspections."  (Id. ¶ 14.)  She further found that the severity of the deterioration "posed a clear and imminent threat" to "public safety."  (Id.)  After consulting with Carrillo—and subsequently obtaining the approval of Rod Sanchez ("Sanchez"), the Director of the City's Development Services Department, and David Garza ("Garza"), Housing and Neighborhood Services Director—the Property was "declared to be an emergency which required demolition."  (Id. ¶ 15.)  Both Sanchez and Garza issued sworn affidavits stating that the Property posed a clear and imminent threat to life, safety, and/or property necessitating immediate demolition.  (Id. at 20–21.)  They further found that there was no "feasible alternative abatement procedure" other than demolition.  (Id.)

On March 14, 2008, Defendant carried out an emergency demolition of the Property.  (Id. ¶ 16.)  On March 18, 2008, Garza, acting on behalf of the City, sent a letter notifying Plaintiff that the Property had been demolished and that Plaintiff should expect an invoice for the demolition and related expenses.  (Id. at 12.)  The next month, an invoice for $3,480.00 was mailed to Plaintiff.  (Id. at 13.)

4

II.     <u>Procedural History</u>

On June 11, 2012, Plaintiff filed suit against the City asserting claims for violations of (1) Chapter 6, Article VIII, § 6-175 of the City's Code of Ordinances; (2) Chapter 214 of the Texas Local Government Code; (3) Article 1, § 17 and § 19 of the Texas State Constitution; and (4) 42 U.S.C. § 1983 for the deprivation of rights secured by the Fourth, Fifth, and Fourteenth Amendments. (Dkt. # 1)  Plaintiff also seeks a declaratory judgment under the Texas Uniform Declaratory Judgment Act that the Property did not constitute a clear and imminent danger to the life, safety or property of any person and that under the circumstances, other abatement procedures were reasonably available rather than demolition.  (<u>Id.</u> ¶ 15.1.)

On April 3, 2013, Plaintiff filed a Motion for Judgment on the Pleadings.  (Dkt. # 22.)  On April 12, 2013, the City filed a Response in opposition to Plaintiff's Motion for Judgment on the Pleadings and a partial Motion to Dismiss.  (Dkt. # 24.)  On April 25, 2013, Plaintiff filed a Reply in support of his Motion for Judgment on the Pleadings and a Response in opposition to the City's Motion to Dismiss.  (Dkt. ## 25–26.)

On August 5, 2013, Plaintiff filed a Motion for Partial Summary Judgment.  (Dkt. # 37.)  On the same day, the City filed a Motion for Summary Judgment.  (Dkt. # 38.)  The parties fully briefed both motions. (Dkt. ## 40–43.)

On October 9, 2013, the Court heard oral argument on the Motion for

Judgment on the Pleadings (Dkt. # 22) and the Motion for Partial Summary

Judgment (Dkt. # 37) brought by Plaintiff.  The Court also heard the

Motion to Dismiss (Dkt. # 24) and the Motion for Summary Judgment (Dkt. # 38)

brought by the City.  After reviewing the motions and the supporting and opposing

memoranda, the Court denied Plaintiff's Motion for Judgment on the Pleadings,

granted the City's Motion to Dismiss, denied Plaintiff's Motion for Partial

Summary Judgment, and granted in part and denied in part the City's Motion for

Summary Judgment.  (Dkt. # 47.)

Specifically, the Court denied Plaintiff's Motion for Judgment on the

Pleadings with respect to Plaintiff's claims for violations of the Texas Constitution

as well as his claims for violations of the Fourth and Fourteenth Amendments of

the United States Constitution brought pursuant to 42 U.S.C. § 1983.  (Id. at 22.)

The Court granted the City's Motion for Summary Judgment on each

of Plaintiff's claims with the exception of his claims brought pursuant to 42 U.S.C.

§ 1983 stating:

> [T]he Court dismisses Plaintiff's claims brought pursuant to 42 U.S.C.
> § 1983.  However, because Plaintiff has not been afforded an
> opportunity to amend his complaint, the Court grants Plaintiff leave to
> amend with respect to his § 1983 claims.

(Id. at 25.)

The Court granted Plaintiff thirty days to file an amended pleading

6

with respect to his § 1983 claims; on November 8, 2013, Plaintiff filed an Amended Complaint.  (Dkt. # 50.)

Plaintiff's Amended Complaint, however, asserts the same causes of action as his first Complaint, including those claims that were dismissed pursuant to the Court's order granting the City summary judgment on each of Plaintiff's claims save for his § 1983 claims, which the Court allowed him to amend.

On November 22, 2013, the City filed an Answer to Plaintiff's Amended Complaint.  (Dkt. # 51.)  On the same day, the City filed a Motion to Dismiss.  (Dkt. # 52.)  On December 6, 2013, Plaintiff filed a Response to the City's Motion to Dismiss. (Dkt. # 54.)

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. 544, 555–56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the

8

parties and the court." <u>Twombly</u>, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 329 (5th Cir.2002).

ANALYSIS

I.     <u>Motion to Dismiss</u>

In its Motion to Dismiss, the City argues that (1) Plaintiff's re-asserted causes of action that have previously been dismissed by this Court should not be considered; and (2) Plaintiff's amended § 1983 claims fail to meet the <u>Monell</u> standard for municipal liability.  (Dkt. # 52 at 2.)

A.     <u>Plaintiff's Dismissed Claims</u>

Although Plaintiff's Amended Complaint re-asserts all of the claims he originally brought in his original Complaint, the Court will only consider his § 1983 claims.  The Court clearly and unequivocally granted summary judgment to the City, dismissing each of Plaintiff's claims with prejudice[1] with the exception of those claims brought pursuant to § 1983.  The Court permitted Plaintiff to amend his complaint <u>only</u> with respect to his § 1983 claims; thus, the Court will not

---

[1] The Court dismissed with prejudice Plaintiff's (1) claims under Article I, §§ 17 and 19 of the Texas Constitution, (2) claim under Chapter 6, Article VIII, § 6-175 of the City's Code of Ordinances; (3) claim under Chapter 214 of the Texas Local Government code; and (4) action for a declaratory judgment under the Texas Uniform Declaratory Judgment Act.  (<u>See</u> Dkt. # 47.)

consider those claims that are re-asserted in his Amended Complaint that have previously been dismissed with prejudice.  Accordingly, the Court **GRANTS** this City's Motion to Dismiss Plaintiff's re-asserted claims.

      B.    <u>Plaintiff's § 1983 Claims</u>

      The Court granted Plaintiff leave to amend with respect to his § 1983 claims.  In his Amended Complaint, Plaintiff alleges the City has a history of (1) summarily deeming residential properties as "imminently dangerous" which require "immediate demolition," and thereafter not demolishing the property, (2) slating dozens of residential properties for demolition, but providing notice to a select few, and (3) haphazardly, informally, and arbitrarily deeming residential properties "imminently dangerous" by wholly unqualified persons.  (Dkt. # 50, ¶ 10.2.)  Plaintiff alleges that the actions of the City's officials were so widespread, persistent, and common as to constitute a custom that fairly represented municipal policy.  (<u>Id.</u> ¶ 10.3.)

      The City has moved to dismiss Plaintiff's amended claims under § 1983.  (Dkt. # 52.)  The City contends that Plaintiff has not sufficiently alleged facts triggering municipal liability under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

      Municipalities and other local government units are among those "persons" to whom § 1983 applies.  <u>Id.</u> at 690.  However, municipalities may not

be held responsible for the acts of their employees under a respondeat superior

theory of liability.  See Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir.

2001) (noting that the Supreme Court has "reject[ed] municipal liability based on

respondeat superior, because the text of section 1983 will not bear such a

reading").  A plaintiff must allege facts showing that the municipality itself—not

merely its employees—has violated the Constitution.  Piotrowski, 237 F.3d at 578

("[T]he unconstitutional conduct must be directly attributable to the municipality

through some sort of official action or imprimatur; isolated unconstitutional actions

by municipal employees will almost never trigger liability.").

          Thus, to prevail in a § 1983 municipal liability claim, a plaintiff must

prove three elements: (1) a policymaker, (2) an official policy, (3) and a violation

of constitutional rights whose "moving force" is the policy or custom.  Piotrowski,

237 F.3d at 578 (quoting Monell, 436 U.S. at 694).  Only by satisfying all three of

these elements can a plaintiff "distinguish individual violations perpetrated by

local government employees from those that can be fairly identified as actions of

the government itself."  Id.

          An "official policy" may arise either directly from an authorized

policymaker's[2] "statement, ordinance, regulation, or decision," or indirectly from a

---

[2]  To determine whether a municipal official is a policymaker, the court looks to
state law to assess whether the official had "final policymaking authority" over the
activity at issue. See McMillian v. Monroe Cnty., 520 U.S. 781, 786 (1997).

"persistent, widespread practice" of non-policymaking municipal employees that "is so common and well settled as to constitute a custom."  Bennett v. Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam).  With respect to direct policymaker action, a single discretionary action taken by a policymaking official does not establish an official policy unless the official is "responsible for establishing final government policy" with respect to the discretionary action taken.  Brady v. Fort Bend Cnty., 145 F.3d 691, 699 (5th Cir. 1998) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).  With respect to official policy arising from custom, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom," and "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations."  Piotrowski, 237 F.3d at 581 (internal quotation marks omitted).

        The Court dismissed Plaintiff's § 1983 claim in his original Complaint because Plaintiff did not plead sufficient facts to satisfy the Monell standard.  (Dkt. # 47 at 25.)  Plaintiff correctly argued that the City's "policymaker," the City Council, adopted an "official policy" by enacting Ordinance 6-175.  Id.  Ordinance 6-175 provided that the City could demolish a dangerous structure without prior notice to the property owner when, "due to one or more structural conditions threatening the structural integrity of a building, there is a clear and imminent danger to the life, safety or property of any person."  (Dkt. # 38-4.)

However, Plaintiff previously failed to sufficiently plead the third element of municipal liability under Monell—namely, "a violation of constitutional rights whose moving force is the policy or custom." (Dkt. # 47 at 23 (citing Piotrowski, 237 F.3d at 578 (internal quotation marks omitted)).) In his original Complaint, Plaintiff argued that the City's "imminent-danger determination" in this case was an "abuse of discretion." (Dkt. # 41 at 9.) However, whether Guajardo and other non-policymaking employees tasked with inspecting the Property abused their discretion in determining that an exigency existed does not establish a custom of constitutional violations under Monell. (Dkt. # 47 at 24.)

In the Order dismissing Plaintiff's § 1983 claims without prejudice, the Court instructed Plaintiff that in order "to state a claim, Plaintiff cannot merely challenge the manner in which the City applied Ordinance 6-175 in his specific case; he must allege facts showing other instances where the City abused its discretion in finding that certain structures—which would otherwise be entitled to pre-demolition notice and a hearing under Texas Local Government Code § 214.001—posed an "imminent" danger to public safety." Id. Because "[a] customary municipal policy cannot ordinarily be inferred from [a] single constitutional violation," Plaintiff must plead other instances of similar constitutional violations committed by the City in order to state a claim for

municipal liability under § 1983.  (Id. (quoting Piotrowski, 237 F.3d at 581 (internal quotation marks omitted)).)

In his Amended Complaint, Plaintiff alleges that "from 2007 to 2011, inclusive, the City . . . ruled that 41 . . . properties were to be demolished unless the owner repaired the dangerous structure."  (Dkt. # 50 ¶ 7.10.)  Plaintiff states that of the "41 houses slated for demolition, 36 were not put on notice by The City's filing with the property records office of Bexar County."  (Id. ¶ 7.11.)  Because this Court must "accept as true all of the allegations contained in a complaint," the Court finds that Plaintiff has sufficiently pled the Monell requirements.  See In re Katrina Canal Breaches Litig., 495 F.3d at 205.  If the City, through Guajardo and other non-policymaking employees tasked with inspecting these thirty-six properties, abused its discretion in determining that an exigency existed and thereafter demolished these properties without notice, this establishes a custom of constitutional violations.  Therefore, Plaintiff has alleged a "violation of constitutional rights whose moving force [was the City's] policy or custom" in his Amended Complaint.  See Piotrowski, 237 F.3d at 578 (internal quotation marks omitted).

The Court notes that had the City filed a motion for summary judgment, the outcome would likely be different; however, because the Court must accept as true Plaintiff's allegations for purposes of analyzing a motion to dismiss,

the Court concludes that Plaintiff has stated a viable claim.  Accordingly, the Court

**DENIES** the City's Motion to Dismiss Plaintiff's § 1983 claim.

II.     Motion to Reconsider Dismissal of Article I, § 17 of the Texas Constitution
        Claim

        Although the Court previously granted the City's motion for summary

judgment on Plaintiff's claim pursuant to Article I, § 17 of the Texas Constitution

(Dkt. # 47), Plaintiff asks the Court to "construe his amended pleadings as a

motion to reconsider" his § 17 takings claim.  (Dkt. # 54 at 1.)

        Rule 54 of the Federal Rules of Civil Procedure permits courts to

revise "any order or other decision, however designated, that adjudicates fewer

than all the claims or the rights and liabilities of fewer than all the parties . . .

before the entry of judgment."  Fed. R. Civ. P. 54(b); see eTool Dev., Inc. v. Nat'l

Semiconductor Corp., 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (holding that

under Rule 54(b), a court retains the power to revise an interlocutory order before

entry of a final judgment).  "Rule 54(b) authorizes a district court to reconsider and

reverse its prior rulings on any interlocutory order 'for any reason it deems

sufficient.'"  United States v. Renda, 709 F.3d 472, 479 (5th Cir. 2013) (quoting

Saqui v. Pride Cent. Am., LLC, 595 F.3d 206, 210–11 (5th Cir. 2010)).

        Although a court has broad discretion to grant a motion for

reconsideration under Rule 54(b), considerations similar to those under Rule 59(e)

15

inform the court's analysis.[3]  See, e.g., Valles v. Frazier, No. SA-08-CA-501-XR, 2009 WL 4639679, at *2 (W.D. Tex. Nov. 30, 2009).  A Rule 59(e) motion to alter or to amend judgment "calls into question the correctness of a judgment."  Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc., 114 F. App'x 137, 143 (5th Cir. 2004) (quoting Templet v. HydroChem, Inc., 367 F.3d 473, 478 (5th Cir. 2004)).  Rule 59(e) "provides relief to a party when there has been an intervening change in the controlling law."  Id. (citing Schiller v. Physicians Res. Group, Inc., 342 F.3d 563, 567–68 (5th Cir. 2003)).  Like Rule 54(b), "[a] district court has 'considerable discretion in deciding whether to grant or deny a motion to alter a judgment.'"  McGillivray v. Countrywide Home Loans, Inc., 360 F. App'x 533, 537 (5th Cir. 2010) (quoting Hale v. Townley, 45 F.3d 914, 921 (5th Cir.1995)).  To prevail on a Rule 59(e) motion, however, the movant must show at least one of the following: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear or manifest error of law or to prevent manifest injustice.  In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002).

    In the amended complaint, Plaintiff pleads that the City intentionally demolished the Property owned by Plaintiff and that the City's intent behind the

---

[3] Rule 59(e) requires that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  Here, the "judgment" (i.e., the Order) was entered on November 7, 2013, and Plaintiffs' motion for reconsideration was timely filed on November 22, 2013.

16

demolition was in the name of "public safety," which is a form of "public use."

(Dkt. # 50, ¶ 8.2. (citing City of Houston v. Crabb, 905 S.W.2d 669, 674

(Tex.App.—Houston [14th Dist.] 1995, no writ).)  Plaintiff also pleads that the

Property at no time posed an imminent danger and the City's summary demolition

was an invalid use of police power.  (Id. ¶ 8.3.)  Finally, Plaintiff pleads that the

facts alleged in his Amended Complaint show that the City's unilateral and

extra-judicial determination that the Property posed an imminent danger was an

abuse of discretion.  Id.

        This Court previously dismissed Plaintiff's § 17 takings claim because

the Property was a "public nuisance" under the statutory definition and, therefore,

the City was justified in using its police power to preserve public safety by

demolishing the building.  (Dkt. # 47.)   Plaintiff now cites to City of Houston v.

Crabb, 905 S.W.2d 669, 674 (Tex. App. 1995), in support of his proposition that

the demolition of a structure "in the name of public safety" is a form of public use,

triggering the protections under § 17 of the Constitution of the State of Texas.

(Dkt. # 50 ¶ 8.2; Dkt. # 54.)  However, this Court's ruling was based on Stewart, a

more recent Texas Supreme Court case.  (See Dkt. # 47 (citing City of Dallas v.

Stewart, 361 S.W.3d 562, 569 (Tex. 2012).)

         In Stewart, decided more than a decade after Crabb, the Texas

Supreme Court held that the "government commits no taking when it abates what

17

is, in fact, a public nuisance."[4]   361 S.W.3d at 569 (noting that the Texas Supreme

Court has "long held" that "the government commits no taking when it abates what

is, in fact, a public nuisance").   Thus, a finding that the property is a public

nuisance will generally be dispositive of a "takings" claim.  Id.  Crabb, cited by

Plaintiff, is a decision from a lower appellate court and is not controlling here.

Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir.

1992) (holding that to determine Texas law, federal courts look to the final

decisions of the Supreme Court of Texas on the issue).  Moreover, it goes without

saying that Crabb, a nearly twenty-year-old decision, is neither an intervening

change in controlling law, see 905 S.W.2d at 674, nor is Crabb new evidence

previously unavailable to Plaintiff at the time of his complaint.

        Moreover, Plaintiff's allegation that the building at no time posed an

imminent danger is not new evidence previously unavailable and is irrelevant to

his § 17 takings claim. A building can still be a nuisance without being imminently

dangerous, and thus its demolition would not constitute a taking. See Tex. Loc.

Gov't Code §§ 214.001-.002; Stewart, 361 S.W.3d at 569.  The Texas Local

---

[4] In its previous order granting summary judgment in favor of Defendant on
Plaintiff's § 17 claim, this Court found that the Property posed a "nuisance" as
defined by Texas Local Government Code § 214.001(a)(1).  Indeed, Plaintiff's
counsel conceded at the hearing that the Property was "unfit for human habitation"
in the normal sense following the fire.  Because the [Texas] Local Government
Code's nuisance definition prohibits buildings that are "dilapidated,"
"substandard," or "unfit for human habitation," this Court found that Plaintiff's
structure was, in fact, a nuisance. (Dkt. # 47 at 19.)

Government Code's nuisance definition "prohibits buildings that are 'dilapidated,' 'substandard,' or 'unfit for human habitation.'" <u>Stewart</u>, 361 S.W.3d at 570 (quoting Tex. Loc. Gov't Code § 214.001(a)(1)).  Plaintiff's counsel conceded at the hearing that the Property was "unfit for human habitation in the normal sense following the fire."  (Dkt. # 47 at 19.)  Photographs taken by Guajardo and the testimony in her declaration also confirm that the building was not fit for human habitation. <u>Id.</u>  Therefore, Plaintiff conceded that the Structure was a nuisance under the statutory definition.

In sum, Plaintiff's Amended Complaint does not allege an issue that presents the need to correct a clear or manifest error of law or to prevent manifest injustice.  The Court granted the City's motion for summary judgment based on consistent holdings by the Texas Supreme Court that the government commits no takings when it abates a public nuisance.  (Dkt. # 47 at 19–20.)  Plaintiff does not bring up a manifest error of law, but rather requests the Court to follow a Texas lower court instead of the Texas Supreme Court.

Plaintiff's claim pursuant to Article I, § 17 of the Texas Constitution fails as a matter of law and the Court correctly granted the City's motion for summary judgment on that claim.  Plaintiff's request for reconsideration is denied.

<u>CONCLUSION</u>

For the reasons given, the Court hereby **GRANTS** the City's Motion

19

to Dismiss Plaintiff's re-asserted claims, **DENIES** the City's Motion to Dismiss Plaintiff's § 1983 claim, and **DENIES** Plaintiff's Motion to Reconsider his claims pursuant to the Article I, § 17 of the Texas Constitution.

Because the dispositive motions deadline has expired, and due to the convoluted nature of the case, in fairness to the parties, the Court hereby extends the dispositive motions deadline to sixty (60) days after the filing of this Order. The deadline for filing dispositive motions is extended to **September 3, 2014**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, July 3, 2014.


_____

David Alan Ezra
Senior United States District Judge