UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH AMAYA, | § § § § § § § § § § § § | Cv. No. 5:12-CV-00574-DAE |
| Plaintiff, | | |
| vs. | | |
| CITY OF SAN ANTONIO, | | |
| Defendant. | | |

ORDER GRANTING IN PART DEFENDANT'S MOTION TO EXCLUDE EXPERT

On August 11, 2014, the Court heard oral argument on Defendant City of San Antonio's (the "City") second Motion to Exclude Plaintiff Joseph Amaya's ("Plaintiff") expert witness.  (Dkt. # 53.)   Edward L Bravenec, Esq., appeared at the hearing on the behalf of Plaintiff, and Judith D. Sanchez, Esq., and Savita Rai, Esq., appeared on behalf of the City.  After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearings, the Court, for the reasons that follow, **GRANTS IN PART** the City's Motion to Exclude Expert Testimony.

## BACKGROUND[1]

This suit arises out of the March 14, 2008 emergency demolition of Plaintiff's Property.  On June 11, 2012, Plaintiff filed his Original Complaint[2] against the City asserting claims for violations of (1) Chapter 6, Article VIII, § 6-175 of the City's Code of Ordinances; (2) Chapter 214 of the Texas Local Government Code; (3) Article 1, § 17 and § 19 of the Texas State Constitution; and (4) 42 U.S.C. § 1983 for the deprivation of rights secured by the Fourth, Fifth, and Fourteenth Amendments.[3]  (Dkt. # 1.)

On March 1, 2013, the Court entered a scheduling order, requiring Plaintiff to file his designation of testifying expert witnesses and to serve the City with materials required by Federal Rule of Civil Procedure 26(a)(2)(B) by June 3, 2013.  (Dkt. # 20.)  On May 30, 2013, Plaintiff filed an unopposed motion to modify the scheduling order.  (Dkt. # 30.)  The Court granted the motion, extending the deadline to designate experts to June 10, 2013.

On June 10, 2013, Plaintiff filed his designation of expert witnesses with the Court.  (Dkt. # 31.)  Plaintiff included a list of expert witnesses, the

---

[1] For a detailed recitation of the facts, see the Court's Order on the City's Motion to Dismiss at Docket No. 60.
[2] Plaintiff subsequently filed an Amended Complaint on November 8, 2013.  (Dkt. # 50.)

[3] The only claims remaining are Plaintiff's claims brought pursuant to § 1983.  (See Dkt. ## 47, 60.)

curriculum vitea of each expert, and brief descriptions of each expert's intended testimony.  (Id.)  The next day, the City moved to exclude Plaintiff's experts, arguing that Plaintiff failed to serve the City with materials in compliance with Rule 26(a)(2)(B) as required by the scheduling order.  (Dkt. # 32.)  Specifically, the City stated that Plaintiff did not serve it with

> a written report prepared and signed by the witness containing a complete statement of all opinions the witness will express, the basis and reasons for them, the data or other information considered by the witness in forming them, any exhibits that will be used to summarize or support them, the witnesses' qualifications, including a list of all publications authored in the previous ten years, a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition, and a statement of the compensation to be paid for the study and testimony in the case.

(Id. at 2.)  Plaintiff responded by arguing that his failure to serve the City with the requisite documents under Rule 26 (a)(2)(B) was harmless error and that he was not required to submit expert reports for each non-retained expert.  (Dkt. # 33.)

On October 9, 2013, the Court heard oral arguments on all pending motions, including the City's first motion to exclude Plaintiff's experts.  (Dkt. # 46.) Although the Court acknowledged that Plaintiff failed to serve the City with written expert reports as required by Rule 26, the Court denied the City's motion without prejudice.  (Id.)  At oral argument, the Court instructed Plaintiff to serve the City with expert witness designations in compliance with Rule 26 within 45

3

days.  (Id.)

On November 25, 2013, Plaintiff emailed a written expert report to the City.  (See Dkt. # 53.)  The expert report contained an appraisal of the Property executed by Mr. Brett Weatherbie.  (Id.)  The next day, the City filed a second motion to exclude Plaintiff's experts, arguing that, once again, Plaintiff failed to comply with Rule 26 (a)(2)(B).  (Id.)   On December 6, 2013, Plaintiff filed a response.  (Dkt. # 55.)

## DISCUSSION

Expert witness testimony is governed by Federal Rule of Civil Procedure 26(a)(2) in unison with Federal Rule of Evidence 702, 703, and 705.  Rule 26(a)(2) outlines the procedural requirements of disclosure, while Rules 702, 703, and 705 address the qualifications of the expert witness and the substance of the testimony.

The City first argues that Plaintiff failed to comply with Rule 26(a)(2)(B).  However, because the Court, for the reasons stated below, strikes the expert report, the Court need not address the Rule 26(a)(2)(B) issue.

Next, the City contests the substance of Mr. Weatherbie's testimony.  Thus, the Court must conduct an analysis under Federal Rule of Evidence 702 to address the qualifications of the expert witness and the substance of the testimony.

Federal Rule of Evidence 702 permits expert testimony if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;(b) the testimony is based on sufficient facts or data;(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule lays responsibility on the court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

District courts are required to act as "gatekeepers," ensuring that expert testimony meets the standards of Rule 702. Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999). In this role as gatekeeper, the district court must determine that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. The gatekeeping role ensures that that an expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358, 372 (5th Cir. 2000) (quoting Kumho Tire Co., Ltd., 526 U.S. at 152) (internal quotations omitted); see also Kinnison v. City of San Antonio, CIVA SA-08-CV-421-XR, 2009 WL 3768442 (W.D. Tex. Nov. 5, 2009).

In its role as gatekeeper, the district court must determine at the outset

whether the expert's proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Daubert, 509 U.S. at 591. "This condition goes primarily to relevance." Id. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Id. (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18; see also United States v. Downing, 753 F.2d 1224, 1226 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

"Expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable." Watkins v. Telsmith, Inc., 121 F.3d 984, 988–89 (5th Cir. 1997).

In his appraisal, Mr. Weatherbie states that the appraisal was

> conducted under the hypothetical condition that as of the effective "retrospective" date of appraisal the subject property was improved with a renovated 1,200 square foot single family residence and associated improvements. The hypothetical residence and associated improvements exhibit renovations commensurate with renovations exhibited by properties located in the immediate market area, the comparable sales outlined in this report and in-line with the construction characteristics exhibited by a good quality, one-story, single family older residence as described in the Marshall & Swift Residential Cost Handbook.

(Dkt. # 53-1 at 3.) Mr. Weatherbie appraised the Property using the "Cost

6

Approach" and the "Sales Comparison Approach."  Using the "Sales Comparison Approach," Mr. Weatherbie establishes that the "retrospective market value of the [Property] . . . under the hypothetical condition that the [Property] was improved with a renovated 1,200 square foot single family residence and associated improvements, as of March 14, 2008, is [$235,000.]"  (Id.)  The "Sales Comparison Approach" that used sales data of similarly sized homes in the area surrounding the Property to establish the estimate for the retrospective market value for a renovated house.  (Id. at 28–34.)

   Mr. Weatherbie also used a "Cost Approach" to estimate that the "depreciated replacement cost new of the improvements [as] $162,687."  (Id. at 35.)  The cost approach is derived by

> estimating the value of the site plus the current cost to replace the improvements, less accrued depreciation in all forms
> The indicated value of the Cost Approach is derived by estimating the value of the site plus the current cost to replace the improvements, less accrued depreciation in all forms. Replacement cost is the cost to construct, at current prices, the subject improvements using modern materials and current standards, designs and layouts. The principle of substitution is basic to this approach. The principal of substitution affirms that no prudent investor would pay more for a property than an amount for which the site can be acquired and for which the improvements can be constructed. The construction cost applicable to the subject hypothetical improvements have been estimated using the Marshall & Swift Valuation Service Handbook.

(Id.)  By adding this estimate to the estimated value of the vacant lot, which Mr. Weatherbie estimates is $60,000 as of March 14, 2008, Mr. Weatherbie estimates

7

that the "retrospective market value" of the Property under the "Cost Approach" is $235,000.  (Id.)

In its Motion, the City challenges Mr. Weatherbie's appraisal, arguing that he addressed the incorrect measure of damages as a matter of law. (Dkt. # 53 ¶ 2.1.)  Specifically, the City contends that "the standard of damages in a case like this is based on the difference in market value of the property as it existed before the demolition and after the demolition, and not on the value of the property assuming it had been renovated."  (Id.)   Further, the City contends that because Mr. Weatherbie's appraisal is based on a hypothetical post-renovation value and does not include the cost of renovation, the evaluation would not assist the jury in determining the pre-demolition value of the property.  (Id. ¶¶ 2.1–2.2.)

In response, Plaintiff contends that Mr. Weatherbie's opinion is relevant because

> it is not beyond the average juror to perform simple subtraction, a juror should be able to arrive at the pre-deprivation value by comparing the empty lot value to the projected improvement value, subtracting the amount of damage caused to the structure by fire (such testimony provided through those who saw the property before the demolition).

(Dkt. # 55 ¶ 4.)

Under settled Texas law, the measure of damages for injuries to real property is the difference in market value of the real property immediately before the injury and its market value immediately after the injury.  City of Texarkana v.

Reagan, 247 S.W. 816, 818 (1923); City of El Paso v. W.E.B. Investments, 950 S.W.2d 166, 171 (Tex. App. 1997) (noting that trial court erred in disregarding a decision from a jury based on instruction for damages to calculate the measure of damages as the difference between the fair market value of the property immediately prior to the demolition and the fair market value of the property after its demolition); Interstate Northborough P'ship v. State, 66 S.W.3d 213, 218 (Tex. 2001) (noting jury instruction on damages); City of Waco v. Roddey, 613 S.W.2d 360, 366 (Tex. Civ. App.—Waco 1981, writ dism'd) ("[T]he proper measure of recovery by plaintiff for damages to realty is the difference in market value of the reality immediately before the injury and its market value immediately after the injury.").

Thus, because the measure of damages is well settled, the issue is whether the expert's testimony allows a fact-finder to ascertain the difference in market value of the real property immediately before the injury and its market value immediately after the injury. See Kinnison, 2009 WL 3768442, at *4 (assessing whether an estimated post-improvement value could be used to allow the trier of fact to determine the pre-deprivation market value).

The trier of fact determines pre-demolition market value by "considering the factors which would reasonably be given weight in negotiations between a seller and a buyer." Kinnison v. City of San Antonio, SA-08-CV-421-

XR, 2010 WL 743795 (W.D. Tex. Mar. 2, 2010) (quoting City of Pearland v. Alexander, 483 S.W.2d 244, 247 (Tex. 1972)).  "[E]vidence should be excluded relating to remote, speculate, and conjectural uses, as well as injuries, which are not reflected in the present market value of the property."  Id. (quoting Tex. Elec. Serv. Co. v. Campbell, 336 S.W.2d 762 (Tex. 1960)).  "Evidence of the factors that increase or diminish the present market value is admissible, not as a measure of damages or as a specific item of damage, but to allow the jury to arrive at the correct measure, the lessened value of the tract."  State v. McCarley, 247 S.W.3d 323, 338 (Tex. App. 2007) (internal quotations omitted).

      Here, Mr. Weatherbie's appraisal does not establish the pre-demolition market value.  In his appraisal, Mr. Weatherbie states that the purpose of the appraisal is to

> estimate the "retrospective" market value of the fee simple estate interest in the 0.1997 acre, or 8,699 square foot residential lot "as if vacant" and the "retrospective" market value of the subject property under the hypothetical condition that as of the effective "retrospective" date of appraisal the subject property was improved with a renovated 1,200 square foot single family residence and associated improvements.

(Dkt. # 53-1 at 2.)

      The appraisal states that the "retrospective" market value of the Property "under the hypothetical condition that the subject property was improved with a renovated 1,200 square foot single family residence and associated improvement, as of March 14, 2008 is [$235,000]."  (Id.)  This value does not

purport to establish, nor can it establish, that the Property had a pre-demolition market value of $235,000.

For a post-renovation market value to be relevant to the pre-demolition market value, it would need to be lessened by a renovation estimate based upon sufficient facts or data. See Kinnison v. City of San Antonio, SA-08-CV-421-XR, 2010 WL 743795 (W.D. Tex. Mar. 2, 2010). However, although Mr. Weatherbie asserts that the "estimated physically depreciated replacement cost new is [$162,687]," his estimate does not take into account the market value of the Property as it stood immediately prior to demolition, but rather assumes the costs based upon the value of a vacant lot. (Dkt. # 53-1 at 35.)

Additionally, Plaintiff argues that the "basis for the cost of the assumed renovations, as explained in the [appraisal,] is the Marshal & Swift Residential Cost Handbook, and the Expert's education, experience, and training." (Dkt. # 55 ¶ 2.) However, Plaintiff fails to address the fact that the appraisal does not even include an estimated cost to renovate the pre-demolition Property, but rather only assumes the construction cost of a post-renovation quality house from the ground up.

Plaintiff's assertion that "a juror should be able to arrive at the pre-deprivation value by comparing the empty lot value to the projected improvement value, subtracting the amount of damage caused to the structure by

fire (such testimony provided through those who saw the property before the demolition)" (Dkt. # 55 ¶ 4) fails to recognize that this speculative calculation would considerably increase the risk of confusing the jury.

The court in <u>Kinnison</u> addressed this issue, recognizing it is the court's role to ensure that the testimony would not mislead the jury. There, the court explained that if the expert witness was "allowed to testify on his report based on the refurbished value of the property, Plaintiff could receive a windfall as the refurbished value alone does not account for the costs necessary to conduct the refurbishment or the feasibility of refurbishment." 2009 WL 3768442. Again, "sufficient facts of data to assess the refurbished value of the home . . . alone— without an explanation as to how refurbishment costs impacted his analysis—is insufficient to assess the pre-demolition fair market value of the home." <u>Id.</u>

Plaintiff asserts that the City "demands that Plaintiff's Expert to literally travel backwards in time and space; that he be able to visit the property before the City demolished it in order to more accurately determine the cost of renovating it." (Dkt. # 55 ¶ 3.) Plaintiff fails to recognize that the pre-demolition market value could be determined through less burdensome avenues than time travel. Plaintiff improperly considers the post-renovation valuation as the only means of deciphering the pre-demolition market-value. However, he could have attempted to establish the pre-demolition market value without using a

12

post-renovation estimate and estimated renovation cost.[4]

For the reasons stated above and for those discussed at the hearing, the Court (1) **GRANTS IN PART** the City's Motion, and **STRIKES** the expert report of Mr. Weatherbie.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** the City's motion to exclude Plaintiff's expert witness and **STRIKES** the expert report of Mr. Weatherbie.  The Court hereby **GRANTS** Plaintiff **fifteen (15) days** from the date of the Order in which to file an amended expert report.  An amended expert report shall be filed on or before **Tuesday, August 26, 2014.**

IT IS SO ORDERED.

DATED:  San Antonio, Texas, August 11, 2014.

_____
David Alan Ezra
Senior United States Distict Judge

---

[4] For example, Plaintiff could have hired an appraiser to estimate the market value of the house based on the previous purchase price in light of inflation and 2008 market values of similar houses in the area.  Additionally, Plaintiff could have attempted to establish the 2008 market value through insurance estimates, photographs of the fire damage, and other evidence of the pre-demolition condition of the house.