UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH AMAYA, | § | No. SA:12–CV–574–DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN ANTONIO, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

Before the Court is a Motion for Summary Judgment filed by
Defendant City of San Antonio ("the City") (Dkt. # 69.)  On December 23, 2014,
the Court heard oral argument on the Motion.  Edward L. Bravenec, Esq., appeared
at the hearing on behalf of Plaintiff Joseph Amaya ("Plaintiff"); Judith D. Sanchez,
Esq., appeared at the hearing on behalf of the City.  After reviewing the Motion
and the supporting and opposing memoranda, and considering the parties'
arguments at the hearing, the Court **GRANTS** Defendant's Motion for Summary
Judgment.  (Dkt. # 69.)

BACKGROUND

I.      Factual Background

On April 5, 2007, Dangerous Premises Investigator Alice Guajardo

1

("Guajardo")—an employee of the City—inspected the residence located at 429 Devine Street in San Antonio, Texas (the "Property") following notification from the Fire Department of a fire-damaged structure. (Dkt. # 69-1 (Guajardo Affidavit) ¶¶ 2–3.)  She found a fire-damaged, unsecured, and "dangerous" structure that "possibly warranted emergency demolition." (Id. ¶ 3.)

On May 17, 2007, Guajardo again inspected the Property and found it was in the same "dangerous," unsecured condition.  (Id. ¶ 4.)  According to Guajardo, her assessment revealed fire damage to the Property's foundation, exterior walls, and roof system.  (Id. ¶ 5.)  She took photographs of the damage and advised the Historic Preservation Office of the "dangerous condition" of the fire-damaged property.  (Id. ¶¶ 4–5.)

On May 29, 2007, Guajardo spoke with Plaintiff, the owner of the Property.  (Id. ¶ 6.)  Plaintiff informed Guajardo that his application for assistance to rebuild the Property had been approved by the Unitarian Universalist Housing Assistance Corporation ("U.U. Housing") and that he would begin repairs in the near future.  (Id.)  However, when Guajardo spoke with U.U. Housing on May 31, 2007, she was advised that Plaintiff's application was still pending.  (Id. ¶ 7.) Around a month later, Guajardo re-inspected the Property and found that no repairs had been conducted.  (Id. ¶ 9.)

On June 7, 2007, Building Inspector Ramiro Carrillo ("Carrillo"), also an employee of the City, inspected the Property and agreed with Guajardo that it was severely fire-damaged and "structurally unsound."  (Id. ¶ 8.)  He recommended demolition of the Property. (Id.)

Several weeks later, Guajardo again inspected the Property and found that no repairs had been conducted.  (Id. ¶ 9.)  On July 2, 2007, she contacted Plaintiff to determine the time frame in which repairs were to be conducted.  (Id. ¶ 10.)  On July 10, 2007, Plaintiff informed Guajardo that repairs would commence on July 16, 2007.  (Id. ¶ 11.)  On the same day, the Lavaca Historic District asked that demolition of the structure be stayed because of its potential historical significance.  (Id.)

On July 30, 2007, Guajardo conducted yet another inspection of the Property and found it to be in the same "dangerous" condition.  (Id. ¶ 12.)  At that time, she recommended demolition of the Property.  (Id.)  On the same day, U.U. Housing requested that demolition proceedings be abated because repairs to the Property were to commence if Plaintiff's application was approved.  (Id.)  Several months later, on November 27, 2007, Guajardo again visited the Property and found it to be in the same condition.  (Id.)  According to Guajardo, although she attempted to contact Plaintiff to discuss the matter, she was unable to reach him by telephone.  (Id. ¶ 13.)

3

On March 13, 2008, Guajardo re-inspected the Property and found that it had "deteriorated substantially from the initial inspections." (Id. ¶ 14.)  She further found that the severity of the deterioration "posed a clear and imminent threat" to "public safety." (Id.)  After consulting with Carrillo—and subsequently obtaining the approval of Rod Sanchez ("Sanchez"), the Director of the City's Development Services Department, and David Garza ("Garza"), Housing and Neighborhood Services Director—the Property was "declared to be an emergency which required demolition." (Id. ¶ 15.)  Both Sanchez and Garza issued sworn affidavits stating that the Property posed a clear and imminent threat to life, safety, and/or property necessitating immediate demolition. (Id. at 20–21.)  They further found that there was no "feasible alternative abatement procedure" other than demolition. (Id.)

On March 14, 2008, the City carried out an emergency demolition of the Property. (Id. ¶ 16.)  On March 18, 2008, Garza, acting on behalf of the City, sent a letter notifying Plaintiff that the Property had been demolished and that Plaintiff should expect an invoice for the demolition and related expenses. (Id. at 12.)  The next month, an invoice for $3,480.00 was mailed to Plaintiff. (Id. at 13.)

II.   Procedural Background

On June 11, 2012, Plaintiff filed suit against the City asserting claims for violations of (1) Chapter 6, Article VIII, § 6-175 of the City's Code of

4

Ordinances; (2) Chapter 214 of the Texas Local Government Code; (3) Article I,

§ 17 and § 19 of the Texas State Constitution; and (4) 42 U.S.C. § 1983 for the

deprivation of rights secured by the Fourth, Fifth, and Fourteenth Amendments.

(Dkt. # 1.)  Plaintiff also sought a declaratory judgment under the Texas Uniform

Declaratory Judgment Act that the Property did not constitute a clear and imminent

danger to the life, safety or property of any person and that under the

circumstances, other abatement procedures were reasonably available rather than

demolition.  (Id. ¶ 15.1.)

On October 30, 2013, after reviewing the motions and the supporting

and opposing memoranda, the Court denied Plaintiff's Motion for Judgment on the

Pleadings (Dkt. # 22), granted the City's Motion to Dismiss (Dkt. # 24), denied

Plaintiff's Motion for Partial Summary Judgment (Dkt. # 37), and granted in part

and denied in part the City's Motion for Summary Judgment (Dkt. # 38).  (Dkt. #

47.)

Specifically, the Court denied Plaintiff's Motion for Judgment on the

Pleadings with respect to Plaintiff's claims for violations of the Texas Constitution

as well as his claims for violations of the Fourth and Fourteenth Amendments of

the United States Constitution brought pursuant to 42 U.S.C. § 1983.  (Id. at 22.)

The Court granted the City's Motion for Summary Judgment on each of Plaintiff's

claims with the exception of his claims brought pursuant to 42 U.S.C. § 1983.  (Id.

at 25.)  The Court granted Plaintiff thirty days to file an amended pleading with respect to his § 1983 claims; on November 8, 2013, Plaintiff filed an Amended Complaint.  (Dkt. # 50.)

On July 3, 2014, after reviewing the motion and the opposing memorandum, the Court issued an Order Granting in Part and Denying in Part the City's Motion to Dismiss (Dkt. # 52).  (Dkt. # 60.)  The Court granted the Motion to Dismiss as to Plaintiff's re-asserted claims and denied the Motion to Dismiss Plaintiff's § 1983 claim, holding that Plaintiff had pleaded sufficient facts to state a viable claim for municipal liability under § 1983.  (Id. at 14–15).  However, the Court noted that the outcome likely would have been different had the City filed a motion for summary judgment.  (Id. at 14.)

On August 26, 2014, the City filed the instant Motion for Summary Judgment on Plaintiff's § 1983 claim.  (Dkt. # 69.)  On December 16, 2014, Plaintiff filed a Motion for Leave to File Response to Defendant's Motion for Summary Judgment.  (Dkt. # 74.)  The City opposed Plaintiff's Motion, (Dkt. # 77), and on December 18, 2014, the Court denied Plaintiff's Motion after finding that Plaintiff had failed to provide good reason why his response was filed more than three months out of time.  (Dkt. # 78.)  However, the Court will consider Plaintiff's Response to Defendant's First Motion for Summary Judgment.  (Dkt.

# 41).[1]  Out of fairness to the City, the Court will also consider the City's Reply to

Plaintiff's Response to the first summary judgment motion.  (Dkt. # 43.)

## LEGAL STANDARD

Summary judgment is proper where the evidence demonstrates "that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); Cannata v. Catholic Diocese

of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  The party moving for summary

judgment bears the burden of demonstrating the absence of a genuine issue of

material fact.  Davis v. Fort Bend Cnty., 765 F.3d 480, 484 (5th Cir. 2014) (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the moving party meets its

burden, the burden shifts to the nonmoving party to come forward with specific

facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v.

Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).

---

[1] At the hearing, Plaintiff argued that the Court should consider his Response to
Defendant's First Motion for Summary Judgment (Dkt. # 41) in lieu of his late
response to the instant Motion.  Although the Court remains unsympathetic to
Plaintiff's failure to file a timely response to the instant Motion, it appears that
other courts have considered previously-filed responses when ruling on subsequent
motions for summary judgment concerning the same claims.  See Ridley v.
Kimberly-Clark Corp., No. 3:01–CV–0056, 2003 WL 1825628, at *2 (E.D. Tex.
Apr. 7, 2003) (relying on plaintiff's response to defendant's first motion for
summary judgment when ruling on defendant's second motion for summary
judgment on the same claims, where plaintiff failed to file a response to
defendant's second motion).  Because Plaintiff's previous Response raises only
those arguments Plaintiff raised at the hearing, the Court will consider it in this
Order.  However, the Court strongly cautions Plaintiff not to make a habit of
relying on previous filings to mitigate his failure to respond in a timely fashion.

The court evaluates the proffered evidence in the light most favorable to the nonmoving party.  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 623 (5th Cir. 2003).  The court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists."  <u>Leghart v. Hauk</u>, 25 F. Supp. 2d 748, 751 (W.D. Tex. 1998).  However, "[u]nsubstantied assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  <u>Brown v. City of Hous.</u>, 337 F.3d 539, 541 (5th Cir. 2003).

DISCUSSION

The only remaining claim in this case is Plaintiff's § 1983 claim against the City under a theory of municipal liability.  (<u>See</u> Dkt. # 60.)  A municipality is a "person" subject to suit under § 1983.  <u>Zarnow v. City of Wichita Falls, Tex.</u>, 614 F.3d 161, 166 (5th Cir. 2010) (citing <u>Monell v. N.Y.C. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978)).  A local government may be sued "if it is alleged to have caused a constitutional tort through a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'"  <u>Id.</u> (quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121 (1988)).  Municipal liability may also attach where the constitutional deprivation was

attributable to a government custom, even if the custom has not received formal
approval from the government entity.  Id. (citing Monell, 436 U.S. at 690–91).

        "[M]unicipal liability under Section 1983 requires proof of three
elements: a policymaker; an official policy; and a violation of constitutional rights
whose moving force is the policy or custom."  Piotrowski v. City of Hous., 237
F.3d 567, 578 (5th Cir. 2001) (citing Monell, 436 U.S. at 578)).  "A municipality
may not be subject to liability merely for employing a tortfeasor."  Zarnow, 614
F.3d at 167.  Instead, "[m]unicipal liability requires deliberate action attributable to
the municipality that is the direct cause of the alleged constitutional violation."  Id.

        The City claims that Plaintiff's Amended Complaint fails to properly
plead the third element of Monell—namely, that he suffered a constitutional injury
whose moving force was a municipal policy or custom.  (Dkt. # 69 ¶ 2.1.)  To
succeed on the third element, Plaintiff must prove both (1) that he suffered a
constitutional injury and (2) that the injury was the result of a municipal policy or
custom.

I.    <u>Constitutional Injury</u>

        Plaintiff's Amended Complaint alleges that as a result of the City's
actions, he suffered violations of his Fourth, Fifth, and Fourteenth Amendment
rights.  (Dkt. # 50 ¶ 10.9.)  Plaintiff first alleges that by demolishing the Property
the City subjected him to an unreasonable search and seizure without a warrant in

violation of the Fourth Amendment.  (Id. ¶ 13.3.)  He next alleges that by

demolishing the Property without notice and without compensation the City

deprived him of his property without due process, amounting to a taking in

violation of the Fifth Amendment.  (Id. ¶¶ 12.3–12.4.)  Finally, Plaintiff alleges

that by demolishing the Property without notice the City violated Plaintiff's right

to due process, including notice and a hearing, in violation of the Fourteenth

Amendment.  (Id. ¶ 11.4.)

The City argues that no constitutional injury resulted from the

demolition because its evidence shows that the City took all appropriate steps to

ensure the Property was demolished only after all constitutional safeguards had

been met.  (Dkt. # 69 ¶ 5.3.)

A.    Fourteenth Amendment

Because the Fourteenth Amendment due process analysis is relevant

to the Fourth Amendment inquiry, the Court addresses the alleged Fourteenth

Amendment violation first.  Plaintiff's Amended Complaint claims that the City

violated Plaintiff's due process rights, guaranteed to him by the Fourteenth

Amendment, when it demolished the Property without notice or a hearing.  (Dkt.

# 50 ¶ 11.4.)

As Supreme Court has explained, "[a]n essential principle of due

process is that a deprivation of life, liberty, or property 'be preceded by notice and

10

opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."  Id. (emphasis in the original).

However, due process "does not require that a property owner receive actual notice before the government may take his property."  Jones v. Flowers, 547 U.S. 220, 226 (2006).  In "emergency situations," the exigencies of "summary administrative action" take precedent over the notice and hearing requirements of the Due Process Clause.  Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 299–300 (1981).  "[W]here a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."  Gilbert v. Homar, 520 U.S. 924, 931 (1997).  "Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action.  Indeed, deprivation of property to protect the public health and safety is one of the oldest examples of permissible summary action."  Hodel, 452 U.S. at 300 (quotation omitted).  In cases where the public health and safety is at risk, "[t]he relevant inquiry is not whether a [summary action] order should have been issued . . . but

whether the statutory procedure itself is incapable of affording due process." Id. at 302 (citation omitted).

Here, Plaintiff has not argued that city ordinance providing for emergency demolitions (City of San Antonio Ordinance 6-175, "the Ordinance") is unconstitutional on its face; instead, he argues that the manner in which the Ordinance was applied in his case caused him to suffer several constitutional injuries.  (See Dkt. # 50 ¶¶ 10.1–10.9.)  The Fifth Circuit, in an unpublished opinion, found that the version of Ordinance 6-175 in effect in 2008[2] was

---

[2] The City presented the Court with a copy of the 2008 version of Ordinance 6-175, (Dkt. # 69-4), and relies on it in support of its argument that the City's actions did not violate Plaintiff's constitutional rights.  (Dkt. # 69 ¶ 4.1.)  The version of Ordinance 6-175 in effect in 2008 read in relevant part:

(a) In cases where it appears to the code compliance director, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished  . . . any one of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction. Such summary action shall require concurrence from at least one other of the aforesaid officials. In the case of summary demolition, concurrence of the director of development services shall be required. Such concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition. The official taking action shall thereafter immediately provide notice to the [Dangerous Structures Determination Board], of the accomplished abatement; and to the owner . . . of said dangerous building.

"presumptively constitutional" for summary judgment purposes.[3] <u>Kinnison v. City of San Antonio</u>, 480 F. App'x 271, 277 (5th Cir. 2012).  The Court finds the reasoning in that case persuasive.  As <u>Kinnison</u> noted, the Ordinance contains several procedural safeguards.  <u>Id.</u>  Before an emergency demolition may take place, two of three designated City officials must agree that a property presents a "clear and imminent danger to the life, safety, or property of any person." San Antonio, Tex., Code of Ordinances § 6-175 (2008).  Furthermore, a determination must be made that "under the circumstances, no other abatement procedure is reasonably available except demolition."  <u>Id.</u>  Finally, "the Ordinance exists against a backdrop of the City's Residential Building Codes, which are based on International Building Code standards."  <u>Kinnison</u>, 480 F. App'x at 277 (citing San Antonio, Tex., Code of Ordinances part II, ch. 6).  For these reasons, the Court agrees that the Ordinance is presumptively constitutional on its face.

Although the statutory procedure is not constitutionally deficient, Plaintiff may still succeed on his due process claim if a state actor unreasonably decided to deprive him of his property.  <u>See</u> <u>Patel v. Midland Mem. Hosp. & Med.</u>

---

      (b) The foregoing emergency abatement action shall be executed not later than seventy two (72) weekday hours . . . after the official views the subject building or structure.

San Antonio, Tex., Code of Ordinances § 6-175 (2008).

[3] While the Court does not rely on unpublished opinions as the law of this Circuit, the Court does in this case find the reasoning in this opinion persuasive.

<u>Ctr.</u>, 298 F.3d 333, 341 (5th Cir. 2002).  As a general matter, however, a state actor's adherence to statutory procedures deserves deference.  <u>Freeman v. City of Dall.</u>, 242 F.3d 642, 653 & n.18 (5th Cir. 2001) (en banc) ("[the] ultimate test of reasonableness is fulfilled . . . by the City's adherence to its ordinances and procedures"; "a showing of unreasonableness in the face of the City's adherence to its ordinance is a laborious task indeed" (quotation omitted)).

Here, the City has presented appropriate evidence showing that it complied with the procedures outlined in the Ordinance.[4]  First, David Garza, Director of Housing and Neighborhood Services ("Garza"), and Roderick Sanchez, Director of the Development Services Department ("Sanchez"),[5] both executed affidavits declaring they had determined that the Property "presented a clear and imminent threat to life, safety, and/or property necessitating an immediate demolition."  (Dkt. # 69-1 at 20–21.)  As required by the Ordinance, Sanchez's affidavit affirmed his determination that "no other abatement procedure was reasonably available under the circumstances."  (<u>Id.</u> at 21.)   Second, Guajardo's

---

[4] The City relies on the Affidavit of Alice Guajardo (Dkt. # 69-1).  At the hearing, Plaintiff argued that Guajardo lacked appropriate qualifications to recommend demolition because she is a building inspector rather than an architect or an engineer.  However, this Court has already determined that Guajardo's qualifications were sufficient, finding that Guajardo was a certified building inspector and authorized to make demolition recommendations.  (Dkt. # 47 at 19.)

[5] Plaintiff does not contest that Garza and Sanchez are two of the three officials whose concurrence is contemplated by the Ordinance.

affidavit confirms that the Dangerous Structure Determination Board was notified of the demolition on April 28, 2008, the first regularly scheduled meeting after the demolition took place. (Id. ¶ 18.) Third, notice of the demolition was provided to Plaintiff on March 18, 2008. (Id. at 12.) Finally, the evidence shows that demolition took place within 72 hours after an official last viewed the Property. [6] Guajardo made a final inspection of the property on March 13, 2008. (Id. ¶ 14.) Garza and Sanchez executed their affidavits on March 14, 2008 and March 13, 2008, respectively. (Id. at 20–21.) The demolition took place on March 14, 2008. (Id. ¶ 16.) The Court therefore finds that the City complied with the Ordinance.

Plaintiff, however, argues that the City's "imminent danger" determination may have been an abuse of discretion in light of the fact that a substantial amount of time passed between the City's determination and the eventual demolition. (Dkt. # 41 ¶ 34.) Plaintiff cites Kinnison in support of this argument. (Id.) In its opinion remanding the case to the district court, the Fifth Circuit held that it could not render judgment for the City because the record contained evidence suggesting that the City's "imminent danger" determination was an abuse of discretion. Kinnison, 480 F. App'x at 279. The property in that case was determined to be an "imminent danger" in 2006, but was not demolished at that time. Id. at 280. The owner made repairs in 2006, but was not given the

---

[6] The record does not show whether Garza or Sanchez themselves inspected the Property, but Plaintiff does not challenge this point.

opportunity to make further repairs in 2008 when the property was re-inspected and subsequently demolished.  Id.  Furthermore, the City proceeded with demolition even though the plaintiff's contractor was on-site and in the midst of repairs when the demolition crew arrived.  Id.  On remand, the district court determined that the plaintiff's Fourteenth Amendment claim should proceed to trial.  Kinnison v. City of San Antonio, No. SA–08–CV–421–XR, 2013 WL 228022, at *6 (W.D. Tex. Jan 22, 2013).

Here, Guajardo first recommended demolition of the Property on July 30, 2007.  (Dkt. # 69-1 ¶ 12.)  On the same date, demolition proceedings were abated at U.U. Housing's request because repairs to the Property would commence if Plaintiff's application were approved.  (Id.)  Guajardo visited the Property twice in November 2007, and attempted to contact Plaintiff regarding its condition, but received no response.  (Id. ¶ 13.)  On March 13, 2008, Guajardo inspected the Property yet again, and "found that it had deteriorated substantially from the initial inspections.  The severity of the deterioration now posed a clear and imminent threat to the public safety."  (Id. ¶ 14.)  The Property was demolished the next day.  (Id. ¶ 16.)

Although eight months passed between the date on which Guajardo initially recommended demolition and the date on which demolition took place, this case is distinguishable from Kinnison in several respects.  First, at no time did

16

Plaintiff actually proceed with repairs to the property.  Second, at the time the

Property was demolished, there was no indication that Plaintiff intended to make

repairs.  Third, although Guajardo recommended demolition in July of 2007, the

"imminent danger" determination was not actually made until the day before the

demolition took place.  The Ordinance requires that two of the designated officials

make the "imminent danger" determination.  On March 13 and 14 of 2008,

Sanchez and Garza determined that the Property "presented a clear and imminent

threat to life, safety, and/or property necessitating an immediate demolition."

(Dkt. # 69-1 at 20–21.)  Pursuant to the Ordinance, the demolition could not have

proceeded without their concurrence.  Guajardo's recommendation in 2007 did not

guarantee that the requisite officials would have agreed with her recommendation.

As explained above, demolition took place on March 14, 2008, immediately after

Sanchez and Garza made their determinations.

        Because the City complied with the Ordinance, and because there is

no evidence that the City's "imminent danger" determination was an abuse of

discretion, the Court finds that the decision to demolish the property was

reasonable and Plaintiff suffered no due process violation as a result of the City's

determination.

B.      Fourth Amendment

Plaintiff's Amended Complaint also alleges that the City subjected

him to an unreasonable search and seizure without a warrant by demolishing the

property.  (Dkt. # 50 ¶ 13.3.)  "The Fourth Amendment requires that any seizure of

property by the State be reasonable."  RBIII, L.P. v. City of San Antonio, 713 F.3d

840, 846 (5th Cir. 2013) (citing New Jersey v. T.L.O., 469 U.S. 325, 340 (1985)).

"[T]he Fourth Amendment reasonableness of a seizure and demolition of nuisance

property will ordinarily be established when the substantive and procedural

safeguards inherent in state and municipal property standards ordinances have been

fulfilled."  Freeman v. City of Dall., 242 F.3d 642, 654 n.17 (5th Cir. 2001) (en

banc).  Because the Fourth Amendment generally requires no more than due

process of law in summary abatement cases, the outcome of a Fourth Amendment

claim depends on whether the seizure complied with due process.  RBIII, 713 F.3d

840.

As the Court established in the preceding section, the City in this case

has presented sufficient evidence showing that it complied with the constitutional

safeguards in the Ordinance and did not deprive Plaintiff of his due process rights

by demolishing the Property.  Thus, the Court finds that the City's seizure of the

Property was reasonable under the Fourth Amendment, and Plaintiff suffered no

Fourth Amendment injury as a consequence of the demolition.

C.    <u>Fifth Amendment</u>

Plaintiff's Amended Complaint lastly alleges that by demolishing the Property without notice or compensation the City deprived him of his property without due process, amounting to a taking in violation of the Fifth Amendment. (Dkt. # 50 ¶¶ 12.3–12.4.)  A violation of the Takings Clause of the Fifth Amendment does not occur until just compensation has been denied.  <u>Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 195 (1985) ("[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.").  Therefore, plaintiffs "must use available state procedures to seek such compensation before they may bring a § 1983 takings claim to federal court." <u>John Corp. v. City of Hous.</u>, 214 F.3d 573, 581 (5th Cir. 2000).  If a plaintiff fails to do so, his takings claim will be unripe.  <u>Id.</u>  Failure to use available state procedures may be excused if the plaintiff can show that the state procedures were inadequate or unavailable at the time of the alleged taking.  <u>Liberty Mut. Ins. Co. v. Brown</u>, 380 F.3d 793, 799 (5th Cir. 2004) (citing <u>Williamson Cnty.</u>, 473 U.S. at 196–97).

Texas law allows property owners to bring inverse condemnation proceedings against a governmental entity that takes the owner's property without

formal condemnation proceedings. [7] See Texas Const. art. 1, § 17; Patel v. City of Everman, 179 S.W.3d 1, 7 (Tex. App.—Tyler 2004, pet. denied).  "If a municipality takes private property without following the required procedures, the affected landowners are free to file inverse condemnation proceedings against the municipality in state court."  Korndorffer v. City of Galveston, No. G–02–144, 2002 WL 34185626, at *6 (S.D. Tex. July 8, 2002) (citing City of Austin v. Teague, 570 S.W.2d 389, 390 (Tex. 1978)).

Here, Plaintiff has not alleged that he has exhausted the available state procedures to seek compensation.  He simply states that he did not receive an offer for just compensation.  (Dkt. # 50 ¶ 1.2.)  Nor does Plaintiff allege that the state's inverse condemnation procedures were inadequate or unavailable.  Upon the facts before the Court, Plaintiff's Fifth Amendment claim is not ripe.   For the foregoing reasons, the Court finds that Plaintiff has suffered no constitutional injury at this time.

II.     Municipal Policy or Custom

To prevail on his §1983 claim against the City, Plaintiff must also show that any constitutional injury was the result of a municipal policy or custom.  Piotrowski, 237 F.3d at 578.  Even if Plaintiff had properly supported his claims of

---

[7] The Court notes that it previously granted summary judgment for the City on Plaintiff's claim under the Takings Clause found in Article I, § 17 of the Texas Constitution.  (Dkt. # 47 at 17–20.)

various constitutional harms, he has failed to show that his alleged injuries were the result of a City policy or custom.  Plaintiff argues that the City's "imminent-danger determination" regarding his Property was part of the City's "custom and policy to haphazardly, arbitrarily, and unilaterally deem residential properties as 'imminently dangerous' in conscious or reckless disregard for the owners' rights to their property and due process of law."  (Dkt. # 50 ¶ 7.13.)  Plaintiff alleges that as a result of the City's actions, he suffered a taking and was deprived of his due process rights.  (Id. ¶ 7.15.)

A plaintiff may prove the existence of a municipal "custom or policy" in one of two ways. First, a plaintiff may show a pattern of unconstitutional conduct on the part of municipal actors or employees.  Zarnow, 614 F.3d 161, 169. A pattern of conduct is necessary only where the municipal actors are not policymakers.  Id.  Alternatively, a plaintiff may show that a final policymaker took a single unconstitutional action.  Id.  Here, Plaintiff complains of action taken by municipal employees who are not policymakers.  Thus, only the first method of establishing a custom is at issue.

In support of his allegation that the conduct in this case was part of a custom fairly representing municipal policy, (Dkt. # 50 ¶ 10.3), Plaintiff claims the City has a history of (1) summarily deeming residential properties as "imminently dangerous" and requiring "immediate demolition," and thereafter not demolishing

the property; (2) slating dozens of residential properties for demolition, but

providing notice to a select few; and (3) haphazardly, informally, and arbitrarily

deeming residential properties "imminently dangerous" by wholly unqualified

persons.  (Id. ¶ 10.2.)  Specifically, Plaintiff alleges that between 2007 and 2011,

the City declared 41 properties were to be demolished "unless the owner repaired

the dangerous structure . . . . Of the 41 houses slated for demolition, 36 were not

put on notice by The City's filing with the property records office of Bexar

County."  (Id. ¶¶ 7.10–7.11.)   Plaintiff adds that in those four years, at least three

other lawsuits have been filed against the City for demolishing a residential

property in violation of the owners' constitutional rights.  (Id. ¶ 7.12.)

           The City correctly argues that Plaintiff has the burden of not only

properly alleging other instances of unconstitutional conduct amounting to a policy

or custom, but also of providing admissible evidence of those other incidents in

order to defeat The City's motion for summary judgment.  (Dkt. # 69 ¶ 5.6.)  See

Zarnow, 614 F.3d at 169 (finding plaintiff did not meet his burden of proving a

municipal custom on summary judgment where he alleged that many

unconstitutional searches similar to the one he suffered had taken place, but offered

no evidence in support of his allegations).  Here, Plaintiff failed to file a timely

response, and has not produced any evidence supporting the allegations in his

Amended Complaint.  These unsubstantiated allegations are insufficient to defeat a

motion for summary judgment.  <u>See</u> <u>Brown</u>, 337 F.3d at 541.  Because he has failed to prove that he suffered a constitutional injury that was the result of a municipal policy or custom, Plaintiff cannot succeed on his § 1983 claim against the City.

<u>CONCLUSION</u>

For the reasons stated above, the Court hereby **GRANTS** The City's Motion for Summary Judgment.  (Dkt. # 69.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, December 23, 2014.

_____

David Alun Ezra
Senior United States Distict Judge